Yes, good morning. James D. Simone on behalf of plaintiff and appellant Daniel Garza. May it please the court, I'd like to reserve three minutes for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. Understood, your honor. I think when you look at the totality of the record here, it's clear that Daniel Garza was denied his right to a fair trial in the Monell portion of this in which he was denied a fair trial based on the exclusion of relevant evidence. The jury here was deprived of the key evidence it needed to decide whether the City of Los Angeles, who is the defendant here, not Chief Beck, the City of Los Angeles, made the conscious affirmative choice to promote Officer Cardona within three weeks of a jury verdict against him, finding constitutional violations based on him maliciously when he battered and essentially tortured Daniel Garza when he was subdued and he applied a painful wrist lock. And I'd like to go through each and every one of those pieces of evidence that was excluded. I think any one of those pieces of evidence that was excluded warrant reversal here. And when you put them totally, it's clear that we were just deprived of a fair trial, improving our Monell allegations. The first piece of evidence that was excluded, that was prejudicial, was what I'll call the ratification letter. It's found in the excerpts of record 805. It's a letter on Chief Beck's letterhead. There's a video of this incident, a large portion of the incident after Mr. Garza is subdued. And in that letter on 805, under Chief Beck's letterhead, it says the act you've complained of occurred, but we find this to be lawful, justified, lawful, and proper. And so this is relevant to Chief Beck as the final policymaker approving the conduct and the basis for it. What do we have to prove in order to prove ratification? We have to prove that the city of Los Angeles approved the act and the basis for it. Well, if we have a piece of evidence, a letter that goes out on Chief Beck's we've reviewed the act, we've witnessed the conduct, and we say that it's lawful, justified, and proper, what more compelling piece of evidence could there be for ratification? Yet the judge in ER 20, in the excerpt of record on page 20, in a footnote, just says I'm excluding the letter without any legal basis for the exclusion. Now, it is true that previously he had decided against this on summary judgment, that the letter alone could not constitute ratification, he said, without additional evidence. And of course, here we do have additional evidence. You have a officer who is promoted to sergeant within three weeks of being found liable for serious constitutional violations and for having acted maliciously against Daniel Garza. But Chief Beck testified and he was subject to whatever questioning you wanted to ask him about what he knew, when he knew it, and on what basis he made whatever decisions he made, correct? My questioning was limited to what he subjectively knew, and this is where I think the court erred as a matter of law, Your Honor, because the case law is clear that under the Hammond versus County of Madera case, for instance, a 1988 Ninth Circuit case, which is a ratification case, that it is constructive knowledge can be used, it's an objective standard. So what the court did was acting from the premise that the only evidence that was relevant was what Chief Beck would subjectively admit that he knew, and excluding everything else, the court made reversible errors in the following ways. One, the clear case law based on Hammond versus County of Los Angeles that holds that municipal decision makers may not insulate themselves from liability by attempting to delegate themselves out of responsibility. And in fact, in the Hammond case, the Hammond case decided as a matter of law that the defendants had ratified that conduct, and it also held that the board, the defendant there, the board was charged with knowledge of the laws. So this is how unfair it was, Your Honor, and of course, as Your Honor knows from reviewing the record, I was the trial lawyer. So every time I would cross-examine Chief Beck, Chief Beck would fall back on basically parroting an incorrect analysis of the law, that this was out of statute, his hands were tied, and he could not interfere with Officer Cardona's promotion because he was informed that it was out of statute. Now, we hadn't testified that as a deposition. This was something that was just sprung at us at trial. So in terms of Your Honor's given the opportunity to cross-examine him, as we've made clear in our papers, I had impeachment evidence. I had impeachment evidence that he made the deliberate decision not to reopen this investigation. And inexplicably, the trial judge would not allow me to read that impeachment evidence into the record. So on the very point that we have to prove that Chief Beck made a was allowed to bring up a new defense that he hadn't testified to at trial, and I was not allowed to impeach him on it. And if you look at the record, every time I would ask him a question about these items, and I can basically point you out to the pages in the record, he would fall back on, well, this is out of statute. On page 196, it doesn't toll the It is certainly past statute. Excerpt 217, he asserts that it is past statute. In other words, he was saying, when I say we say it is past statute, he was saying that because of the statute of limitations, he could not use this conduct of Officer Cardona in order to deprive him of a promotion. But that is incorrect as a matter of law. Under Government Code Section 3304, subsection F, if there is pending civil litigation that involves a public safety officer and his threat to the public, that civil case itself tolls the statute of limitations. So it was within the statute of limitations. And so the others... But even if he was mistaken on that point, isn't the operative question what he knew? Or on what basis he made his decision? No, Your Honor. It's not what Chief Beck knew. That's contrary to the long, long list of both Ninth Circuit and Supreme Court decisions that says that, one, this constructive knowledge can be used against the policymaker. So the fact that he should have had constructive knowledge. Two, that's an objective standard, not a subjective standard. And three, that you cannot delegate responsibility and then claiming, I didn't know. So all of those, all of those doctrines that if you look at the Hammond case, and again, Castro versus City of Los Angeles, Ninth Circuit 2016 case, it quotes the Supreme Court, that they strongly suggest that the an objective inquiry. So the focus on what Chief Beck subjectively knew was an error as a matter of law. And all of the evidentiary rulings that flowed from that assumption ended up prejudicing plaintiff's case. And then when you take into consideration what actually occurred here, that you have a city attorney who is the agent of the City of Los Angeles. Now I would bring your honor back to the Pembauer versus City of Cincinnati case in which the policymaker who tried to delegate saying, well, I was following legal advice of the district attorney in that case. They said, no, you can't claim that you're just following legal advice when the legal advice is wrong. This was, Pembauer was a case in which they ended up breaking into someone who hadn't complied with a warrant and it was clearly contrary to the law. No, you broke the law. Now in this case, we have the city attorney as the agent of the City of Los Angeles that actually argued that Officer Cardona had acted with malice when he performed that conduct against Daniel Garza. And then you have the doctrines of judicial estoppel that we've briefed and that should have been used here, that the city took the position that Daniel Garza acted with malice, and then they were allowed to retreat from that position of trial. In fact, it was so brazen, your honor, that when the city attorney argued in her closing arguments, I have great respect for the city attorney's office in Los Angeles, but she actually argued that there was no evidence here that you had a supervisor, Commander Procopwood, testified in that first trial that when he viewed that video that officer's conduct was unreasonable and unprofessional. And you have the fact here that we were able to get into evidence, his response to interrogatories, which said I reviewed the internal investigation. And then another major error here was that we couldn't get into evidence anything about the first trial. So how is a jury supposed to make a decision as to whether a promotion ratifies prior misconduct without context about what that prior misconduct was? We weren't allowed to play the video. We weren't allowed to offer Officer Procop's testimony, which was videotaped. He testified by videotape deposition in the first trial that this was testimony of an eyewitness. It said that Officer Cardona had battered Mr. Garza over 20 times. 20 times while Mr. Garza was just protecting himself and not fighting back. The jury was not given any of that evidence. I could ask Chief Beck, did you know about it? Chief Beck says, no, I didn't know about it. And then I had no evidence. And the city attorney in her closing argument, actually, if you review it, argued that you didn't hear any evidence of the commander saying that this was unreasonable. You just heard Mr. DeSimone asking about it. You just heard Daniel Garza's mother saying that's what happened. So they were able to retreat from the position. And the concept of judicial estoppel just does not allow for that. Because they were able to take advantage of what they did in the first instance, in the first trial, to avoid compensating Mr. Garza. So what you... I'm not hearing you, Judge Rawlinson. I still can't hear. I muted myself. So Chief Beck signed the actual order that promoted Officer Cardona. That's correct. Chief Beck signed the order. So what would have happened if Chief Beck had refused or declined to sign the order? What would have happened is there would have been a reopening of the investigation and the City of Los Angeles would have been given the opportunity to review all the evidence that the city attorney had in making its determination strategy-wise to say that Officer Cardona acted maliciously. And I think the promotion would have been declined. So is it your position that Chief Beck had the authority to stop the promotion by declining to sign the order? He absolutely had that authority under Government Code 3304 and relied on a misstatement of the law. And again, to subjectively, to allow Chief Beck to subjectively parrot a statement of the law instead of allowing the objective evidence and what he constructively knew. And we were denied. We submitted jury instructions on agency. And the jury instructions basically said that the city attorney is an agent and he should have constructive knowledge of all those facts that the city attorney had. And that is what the law is. And there was no reason not to apply those bedrock concepts of law in terms of agency here. And I see I have a minute 30 left. And if there's no more questions, I will defer. All right. Thank you, counsel. We'll hear from the city. Good morning, your honors. May it please the court. I'm Michael Walsh, Deputy City Attorney for the City of Los Angeles. I'm sorry. So I think it's important to remember here what the actual scope of the second trial is, because it was very limited. Clearly, plaintiff's counsel wants to retry the entire first case. He didn't entirely get the result he wanted. He wants to retry everything that existed before. But that's simply not what's at issue here. Counsel, on the contrary, some of what happened before was relevant. Well, actually, I don't know. Well, no, I actually I don't I don't think I do agree. If you had a specific example in mind, I suppose I could address it. Well, what is the liability based on what the city knew or should have known regarding the actions of its employees? So how is that? How is that question supposed to be answered in a vacuum? Well, it's not answered in a vacuum that the question was just whether Chief Beck's failure to derail a civil service promotion, which was already completed. He was only waiting for assignment. He had been effectively promoted. He was on an approved list. And as soon as there was an opening, he was going to get the opening. It happened as a matter of circumstance that happened after this verdict. It could have just as easily happened before. Well, the question I asked Mr. DeSimone, I'm asking you, what would have happened if Chief Beck had declined to sign the transfer papers, the promotion papers? Right. Well, based on Chief Beck's understanding that they were out of statute and he had no belief they weren't, what would have happened was he would have been sued by everyone on that transfer order for improperly denying them promotions that they were legally entitled to under government code statute, couldn't be interfered with. And we would have subjected the city to all sorts of employment litigation. I realize that's not Plaintiff's counsel's concern, but it's certainly a concern for the city. When Plaintiff's counsel says... Counsel, is it your position that he had to sign all of them? That he couldn't say that he was accepting any of them? So you're saying that the chief of the police for Las Vegas Police, Los Angeles Police Department cannot decline to promote? Well, and as Chief Beck explained at trial, he could have declined, but it would have been, to his understanding, a violation of statute. And that would have... So taking the court's example, so say he just delineates Garza out, or I'm sorry, not Garza, Cardona, Officer Cardona. He signs the transfer order and just deletes Cardona from that order. Based on his understanding of them being out of statute, then Cardona now has a viable employment action against the city for denying him a promotion to which he has a statutory right based on the improper actions of Chief Beck. When Plaintiff's counsel says Chief Beck testified, he could have denied the promotion. Sure, he could have, but under Chief Beck's understanding of the situation, that would have been a violation of statute, and especially the city of the liability. The fact that he could violate the statute to stop the promotion, that shouldn't be the basis for ratification. That's a little insane, but that's what Plaintiff's counsel is asking for. Because as far as the city knew, and of course he talks about the imputed knowledge and the risk management. As far as anyone in the city knew, this was out of statute. The federal action was filed more than a year after the incident took place. As far as any of the evidence shows, no one in the city knew about the state court action. You look at the judicial notice that Plaintiff's counsel filed with the docket of his forum shopping exercise in state court. The city doesn't appear on the docket. They're not a party. They weren't served. They didn't appear. There's absolutely nothing in the record to suggest the city had any knowledge of the state court action. The action they did know about was the federal court action, and that was filed more than a year after the incident, which is under 3304. No evidence that could have been ascertained within a year could be used to stop the promotion without violating the statute. Do you think it was a little disingenuous for the city to take the position in one proceeding that the acts that were engaged in by the officer were malicious, and then on the other hand say that they were in conjunction with policy of the city? I'm sorry, your honor, I couldn't hear your entire question. Were you talking about the... Were there inconsistent positions taken by the city regarding the actions of the officer? No, there weren't, your honor, and part of that requires some knowledge of, and hopefully we explain this sufficiently in the briefing. The IA investigation, for example, is as the trial court properly described, an independent factual investigation. It is a policy. It is an establishing procedure. It is simply a factual inquiry into the specific allegations that were made. It doesn't, for example, the IA investigation in no way addressed whether Cordona was in the course and scope of his duties as an LAPD officer when he acted. It in no way addressed his motivation, so malice wasn't even considered, and there was no opinion whatsoever on malice, so that's completely outside the scope of the internal affairs investigation. Those were not investigations to say whether or not the actions that were taken by the officer were in accordance with the LAPD policies? Well, the purpose of the investigation is to investigate the claims that are made. If you look at the IA investigation, it specifically lists the four things being investigated, and they were quite specifically whether Cordona, I think, was punched him in the and whether he twisted his wrist, and that's it. But the point of the investigation, I represented the police department for many years, right? Of course, the point of the investigation is to determine whether or not the officer acted consistently with the policies of the department, right? And if the officer did, he's exonerated, and if he didn't, he's disciplined. Right. Well, those aren't the only two alternatives, though, Your Honor, because in this case, they did exonerate Cordona with regard to the wrist lock, and they said that was within the IA investigators concluded that his actions in that regard were in compliance with policy. The jury would later disagree, but you have different fact finders come to different conclusions sometimes. On the other three claims, the internal investigation just concluded that on the evidence they had available, they couldn't conclude that it happened the way Garza alleged. They didn't exonerate Cordona. They didn't say what Cordona did was proper or within policy or that it wasn't within policy. They just said they couldn't verify the incident the way Garza described it, and that's all they said. Okay. So there was no endorsement of his actions. On the wrist one, there was an endorsement of his actions because- On the wrist, yes, that's in the internal affairs report. How is that because he was following policy of the department. That was the conclusion of the IA report. That's right. Exactly. So that's an implicit endorsement of his action. But how is that consistent with Ben arguing at the trial that his actions were malicious? Well, the trial was much broader than the internal investigation report. The trial covered that entire range of activities that took place and everything Cordona did. There was also a different body of evidence that was considered. There were different witnesses who testified. They were asked different questions. When you have two different fact finders addressing a similar incident, even if they have the exact same body of evidence they're considering, they're not going to come to the same conclusion necessarily. But it's not the fact finder that I'm asking about. I'm talking about the city's position in the litigation, not the fact finders. I'm talking about the city's position. Is the city's position consistent with the finding in the internal affairs report? They were, your honor, in a sense. Well, they weren't contradictory. They dealt with different things. The IA report was addressing whether specific items were within practice and policy. They concluded one was and that the other three they couldn't make a determination. Let's focus on the one, the risk lock that the IA said was within policy. What was the city's position regarding that particular incident in the trial? You know, your honor, with that specific incident, I'm not sure. I know it was plan's position that they were out of policy and it was the, I believe that was the final adjudication. I think the city's position of trial primarily was that Cardona was outside of the course and scope regarding all of his actions, that he wasn't acting as an LAPD officer. He was acting as a private citizen going after the guy dating his stepdaughter. And it had nothing to do with LAPD. That was their primary position regarding all of his actions. Well, isn't that contradictory? With what? At least with respect to the risk lock. Not at all. The risk lock, he could have performed, I mean, the internal investigation concluded that based on the evidence they saw, he performed the risk lock within policy. The jury ultimately would disagree based on the evidence the jury saw. But whether the risk lock was acting as a police officer when he engaged it, those are two completely different questions. Well, that's not true, actually, because if the internal affairs had determined that he was acting outside the course and scope of his employment, they would not have said he was acting within policy because those two are inconsistent. The internal investigation in no way addressed whether or not he was in the course and scope. That was not an issue raised. That was not an issue considered. The internal affairs had no opinion on that and no statement on that. They say it's justified. That implies that it was consistent with policy of the department. I think that might be a stretch of interpretation. I think they were just looking at the physical actions that were taking place, not whether he was in the course of scope or other more theoretical. That's a completely different legal consideration. I'm not even sure internal affairs is. Internal affairs is concerned with whether or not police officers are performing in accordance with the policies of the department and the policies of the department encompass on duty conduct and off duty conduct. That's great. If you were acting outside the scope of his employment, that would have been a consideration that internal affairs. I suppose it could have. Your Honor, this internal investigation didn't address that issue one way or the other. So that was not part of the conclusion they raised. I mean, I see the courts inferring that from the opinion, but that wasn't actually addressed at all in the internal affairs investigation. And so the city's position that he was acting outside the course of the scope, I don't think contradicted that. And then as far as malice, malice was in no way an issue addressed by the internal affairs investigation. His motive for why he did what he did wasn't remotely addressed. So that wasn't at all contradictory with the city's position at the first litigation. And none of this is contradictory with the position taken in the subsequent litigation because the position there wasn't that Cordona did anything correctly or there was no way defending his actions. It was simply saying that based on all the information Beck had, his hands were tied by statute and he was stuck with He actually asked twice if there was some way they could interfere with this, which I'm sure from your experience, you know, that is a lot more than the chief of police generally gets involved in a civil service promotion. He was already making inquiries and based on all the understanding he had, there was nothing to be done because as far as the city knew, the only lawsuit involved was the federal one. And that was filed more than a year after the incident. So the time was told they were out of statute. There was nothing to be done. And that matters because you can't accidentally ratify something. Chief Beck wasn't endorsing anything Cordona did. He thought he was stuck under statute. Plaintiff wants to backdoor this in as if there's some sort of accidental ratification, but that's just not how ratification works. It has to be a deliberate decision. And that simply doesn't exist here. I'm sorry, I was expecting a follow-up question. As far as the other, I mean, I think, I'm sorry, I didn't say anything. Oh, no, I thought I heard something. I think the other issues are briefed fairly well. I realize I'm running short on time. I think it is worth touching base though, that as an alternative grounds for affirming the judgment, the fact is under the LA charter, the chief of police simply isn't the final policymaker for purposes of civil service promotions. That just isn't the law. Who is the policymaker? The board of commissions. Let's see. Why didn't the board of commissions sign the transfer order then? Well, as Chief Beck says, someone has to do the final. It's administrative at that point. And Chief Beck testified to that, that he gets one of these every 28 days. They have hundreds of names on them. At that point, it's just a question of paperwork, but he doesn't decide who gets to be on the list. He doesn't decide what the qualifications are. He doesn't decide whether these people have met the qualifications. All of that is done pursuant to the rules and procedures set forth by the commission. And that's by LA charter. The LA charter just says that the board prepares the list of candidates and gives that to the appointing authority. Doesn't that suggest that the appointing has some sort of authority? Well, the charter, the commission sets the rules, the qualifications, who gets to be on the list. I mean, ultimately, Chief Beck signs the order, but again, that's an administrative function at that point. Unless he has some grounds, and he looked for ones in this case. If he had found evidence he could use that was outside of stat, that was something he could use, something new information, he has some ability to use that. But that doesn't make him a final policymaker. The fact that he's in the process and has some discretion in this process does not make him the final policymaker. Well, I don't know. I don't know about that because you said that he could have declined to make the assignment. So that makes him the final policymaker. Whether or not it would initiate litigation is beside the point. The point is he had the involved in this multi-step process, and a lot of them have some discretion within the limits of their part of the process. They're not all final policymakers. Well, that's the point. Somebody has to be the final policymaker. And the person who has the power of the pen, so to speak, to make the appointment or not make the appointment is a good candidate for being the final policymaker. Because if he didn't sign this, it wouldn't have taken effect. Well, I think that that's a bit of a stretch, Your Honor, to say he's the final policymaker, meaning that he could choose to violate statute and expose the city to all kinds of liability. I mean, sure, he has that ability, but that hardly puts him in a policymaker position. It's a matter of interpretation whether he would have violated the statute because opposing counsel says that the statute was told. So that's not a foregone conclusion. But the point is, someone has to be the person who is the appointing authority, as Judge Heinsacher said, and it's not the commission. Yeah, I understand what Your Honor is saying, but I'm not sure that the final administrative, just because Chief Beck was the last person to act in a long process that is defined and controlled by rules and procedures, he does not set? Well, he signed the actual order that effectuated the promotion. That is true, but at that point, that's just an administrative function. That's the result of a process that's established and controlled completely outside of his control. It's just the final administrative process. It wouldn't have taken effect unless he signed it. And he's the head of the police department. You can't discount the fact that he runs the police department on a day-to-day basis. Yes, and the case's plaintiff's sites in terms of police procedure and use of things, he may well be the final policymaker. I'm not disputing any of that. We're just talking about civil service promotions that are controlled by policies and procedures he has no input in and no control over. As a general matter, he has no idea who's being promoted. It's hundreds of people every 28 days. He's signing administrative paperwork based on a process defined and controlled by someone else entirely. Are you saying that he has no discretion on who to promote or who not to promote, not based upon sort of ignoring or violating any laws or regulations, but simply based upon the facts that are apparent to him? There are two ways. Well, anything the lieutenant or above, he does have discretion. So we're just talking about the civil service promotions at the lower ranks. At the lower ranks, that's exactly what I'm saying. He's a policymaker. He's going to determine who gets the promotion and who doesn't get the promotion based upon his exercise of discretion. Below lieutenant, that's just not true, your honor. That's just not how the LA City Charter is written. Lieutenant and above, that is true. He also has veto power over new recruits who haven't finished the probationary period. Those are both specifically provided for in the charter. But with regard to the lower ranks below lieutenant, that is absolutely not true. The chief has no discretion about that. He might have some ability to affect it, given certain circumstances, if there's certain violations, evidence that he can bring up. But as a matter of course, no, he has no discretion. That's entirely controlled by the civil service. Chief Beth even explains that. It used to be under the control of the police chief. And it's the way he put it, we got somewhat bad results the way that worked out, that they decided to take that away from the chain of command and the police and make it a civil service position as a way of making it more fair and less discriminatory and less personal politics and all sorts of all the reasons you have a civil service system applies to the lower ranks of the LAPD. Just because it's the civil service system doesn't mean that there is no policymaker involved. There still has to be someone who is the appointing authority. You talked about the charter, the charter then says the appointing authority. That's not the commission. So who is the appointing authority then? I have to go back and look at the board. Well, I think you're putting a lot of responsibility on Chief Beck, where he has very little control and really little actual authority, because he's just the last person to sign pen to paper. The buck stops somewhere in every organization. The buck stops somewhere. Right. And then with regard to lower ranks and civil service promotions, that's the board of civil service commissioners. That's not because it says that they refer to the appointing authority. I think that that just creates a whole nest of problems, Your Honor. Essentially, you're saying the chief has the ability to buy. I mean, he doesn't have any real authority to deny the transfer unless he can find some way of some limited ability around the statute. There isn't any for the hundreds and hundreds of people who are on each one of these transfer orders every 28 days. He doesn't decide who's on the list. He doesn't decide how to get to the list. And if he doesn't sign it, that would just be chaos. So you're suggesting he should individually review each one of the people on the list because if he has the responsibility, then he has to go through each and every one of them. Otherwise, it's meaningless. I'm all I'm saying is there has to be someone who is the appointing authority. That person, I mean, regardless of how you have advised him to function in the system, that's a different issue from what the how the charter says it should work. I understand as a practical matter, maybe that's how you all have devised it to work. But under the law, there has to be someone who is the policymaker for this particular decision. Right? I think I think Your Honor is equating final policymaker with appointing authority. And I don't know that those terms are properly equated. I don't think since the entire terms of who gets on the list, how they get on the list, who gets to be on the list, what promotions they get are all determined by the commission. And the commission should sign to make the appointment. If they're the ones who are actually making the decision, they should sign it. It just it just seems incongruous to me that the police chief is signing it if he doesn't have the authority over who goes on the list. Your Honor, I think I think that's elevating what ends up being a perfunctory administrative function into much more than it actually is. And that's not how the charter is enacted. That's not how it actually happens. The chief doesn't determine who's on the list or how they get there. That's not the point. It's entirely the point in terms of who the final policymaker is. That's not the point. The list is is is who's presented to him for selection. And he selects from that list. That's that's the act that is effectual in terms of who gets a promotion. So in many instances, there are civil service commissions. There are lists that are given to the final decision maker and the final decision maker goes down the list and decides who is to get the promotion, who is to be hired. That doesn't make it that the person who compiles the list is the final policymaker. Well, except the person compiling the list is the one who determines who qualifies to be on the list, who gets to be on the list, who's entitled to be on the list. HR people do that all the time in the ninth circuit. You know, we have people who are being qualified for the job and they go to a list and then the circuit executive looks at that list and determines who is going to be hired. People who compile the list are not the people who are going to determine who's hired. You know that that that might be in certain circumstances for an internal administrative procedure. But in this case, the list who determines the list is set by by charter and regulation. The chief has no authority to interfere with that process, except in a very limited fashion. He has some discretion, but that doesn't make him. I feel like we're going right. I've taken you far past your time. So are there any questions from the other panel members on this? No, thank you. Yes, thank you very much, your honors. In terms of the focus of the last question, I think it is very important that it was Chief Beck that signed off on this promotion. And I think it's absurd to say that he couldn't parse this out, that he would have had to reject everyone. He could have rejected Cardona. But there's another big piece of what Chief Beck did. And essentially didn't do that shows that the city of Los Angeles is liable. He could have reopened an investigation into Cardona after the jury's verdict to see whether or not the internal affairs investigation properly adjudicated that this was lawful justice, justified or proper, or whether the jury. Why did he need to do that? Because there's nothing in the record that I'm seeing that Chief Beck really disputed the verdict in the first case or was going out there saying that the verdict was wrong and the jury got this totally wrong and the internal affairs got this right. That's not in the record. So why do we need to reinvestigate? He wasn't fighting against the first verdict. He was going forward understanding what had happened. Well, he needed to do it because he is the policymaker and he has the ability to promote Officer Cardona within three weeks of this verdict. And the message it sends, why does he need to do it? Because we're talking about policies here that basically, traditionally, Monell liability have been the type of policies that chief of police make. Do they tolerate or condone excessive force? You have a very public verdict. It was in the LA Times, it was on television, and you are promoting an officer to sergeant within three weeks. The message that that sends as the chief of police to the rank and file officers is that excessive force is tolerated and condoned. In fact, you could be promoted within three weeks of being found there. The other reason he needed to do that is because you have the city attorney. Now the questions, the earlier questions to judge, to judge, excuse me, to Michael Walsh, were what position did the city take here? Well, the course and scope of employment was decided against the city. The jury found that the Officer Cardona was acting in the course and scope of employment. But if you look at excerpts of record, pages 590 to 592, which is the city attorney's closing argument, and he talks about how Officer Cardona's conduct was despicable. And he said that if it was so despicable that afternoon, it has to be held to be malicious, that he acted in willful and knowing disregard of Mr. Garza's right to safety. So that knowledge of the city attorney, that Officer Cardona acted with that level of maliciousness, has to be imputed to Chief Beck under the law. That's where the jury instructions of agency that we put in. Again, it's the city of Los Angeles, that's the defendant. And if I could just point your honors to the case of Medeiros, which we have cited, I'm sorry, Mendiola-Martinez v. Arpaio, 836 F. 3rd 1239. Again, a Ninth Circuit 2016 case, where it says it's not the subjective standard. It's an objective standard when you're looking at a city entity. And again, the famed Sheriff Joe Arpaio was the defendant in that case. They said he was a redundant defendant. And they made the county the defendant in this particular case. And they said, therefore, you don't look at what's in Arpaio's subjective knowledge, you look at objectively what the county knew. And in the same way, objectively, the city of Los Angeles knew that Officer Cardona acted maliciously when he violated someone's rights. And the city of Los Angeles promoted that man within three weeks of that verdict. And I mean, that issue was presented to the jury, right? I mean, we're not here on summary judgment or anything like that. We're here post the jury. So the jury got to hear what the result of that earlier trial was, got to hear what Chief Beck did, and the signing of the promotion. And they made a call and said, we don't think this is ratification. I think it's something else. Why should we disturb that? I mean, they heard both sides of this. Well, the reason why it should be remanded is because the jury was deprived of all of the relevant evidence. They were deprived of the letter. They were deprived of a commander saying that this conduct was unreasonable. They were deprived of an eyewitness. They were deprived of the video itself. I mean, how do you show whether or not the conduct is ratified unless you know what the actual conduct was? So while we were tiptoeing around the edges of some of the conduct, we were never able to introduce evidence. So while I would agree that normally a jury verdict, hey, I lose a jury verdict, it's the end of game. This is a case where that's not true because the jury didn't hear all the relevant evidence. There are two main purposes of Section 1983 litigation. One is deterrence. One is compensation. My client hasn't received a dime in compensation for the harm that it's done to him because the officer declared bankruptcy. And you're not deterring this conduct if you're promoting an officer within weeks. And again, I fall back on Government Code 3304F. This is not a matter of interpretation whether or not the City of Los Angeles had the right to interfere with this promotion. They had the absolute right because the statute is told when those lawsuits are filed. And that's in Government Code 3304F. In the Hammond case, and all of the Supreme Court progeny says those policymakers, they are imbued with knowledge of the law. They have to have in this trial. For Chief Beck, at every turn, when I tried to cross-examine and say, my hands were tied, I couldn't violate the law when he is misstating the law. The knowledge of the law, the knowledge of the City Attorney in terms of what the City Attorney knew about the first trial should have been imputed to Chief Beck. And again, it's the City of Los Angeles is the defendant. And what we have here is a really bad, dangerous result because we have a situation where you have a person whose civil rights were violated and he's not compensated. But more importantly, you have in this time where we want police accountability, you have a department which has provided absolutely no accountability here. You have a department which said that we condone the use of excessive force. We can go so far to have one of our representatives, a City Attorney arguing court that this officer acted despicably and within three weeks promote that officer. Something is wrong there. Something is drastically wrong. And this court is the court that can right this wrong by reversing and remanding. And I would suggest a couple of things. One, it should be joint and several liability for the authorities that we've placed in there. And two, I think that this is so egregious that we should actually win this as a matter of law. We asked for a directed verdict. And I argued to Judge Wilson. Judge arguing a point of law as an excuse for not interfering with this promotion. That's contrary to the law, contrary to Government Code 3304. We should get a directed verdict. And the jury wasn't given that law in 3304. In other words, that wasn't a jury instruction that I can then tell the jury, this is the law that you have to follow. And that the law that when Chief Beck said the law was told he's absolutely wrong. This is why that wasn't a jury instruction that was given. Instead, the jury instruction that was given was actually he added on to the Ninth Circuit ratification instruction in a way that was misleading because it didn't apply to this situation. And I argued that to Judge Wilson as well. But basically, the last part of that ratification instruction said the failure to not approve a subordinates decision. But this is not a subordinates decision. This is where a policymaker made two key decisions. One, he promoted an officer within three weeks of the finding of misconduct. And two, he refused to reopen an investigation. And in closing, I know my time is up and well passed up. But if you look at the excerpts of record 558559, and I asked him, you deliberately chose not to open up that process. And the predicate question was to open up an investigation. And this was in August, after he had heard Daniel Garza's mom, Angela De Jesus, at a commission meeting, tell him everything that had happened here. And his answer was, I did. I did deliberately choose not to open up that process. But guess what? As you honors know, I wasn't able to read that impeachment evidence. It was not to reopen an investigation. And that's reversible error right there that did not allow a fair cross examination. Thank you. We understand your position. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court that completes our calendar for the morning. We are in recess until 9am tomorrow morning.
judges: Rawlinson, Linn, Hunsaker